IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VERIZON PENNSYLVANIA LLC, *Plaintiff*, v. COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, LOCAL 13000, *et al.*, *Defendants*. | CIVIL ACTION NO. 16-03992 |

**PAPPERT, J.**                                                                                                            **OCTOBER 20, 2016**

**<u>MEMORANDUM</u>**

  This case arises out of an arbitration between Verizon Pennsylvania LLC and the Communications Workers of America, AFL-CIO, Local 13000 and District 2-13 (collectively the "Unions"). In 2008 the Unions filed a grievance asserting that Verizon had violated the parties' collective bargaining agreement ("CBA") by offering customers a self-installation process for video set-top boxes and utilizing common carriers to ship the set-top boxes to customers, instead of having technicians deliver them. The parties were unable to resolve the issue through the grievance process, and the dispute was submitted to a tripartite arbitration board. The Board held a hearing in December 2015 and issued an Award in July 2016. In the Award, the Board directed Verizon to cease and desist mailing set-top boxes to customers under certain circumstances, referred the issue of remedies back to the parties and retained jurisdiction in case the parties could not agree on a monetary remedy.

  Following the issuance of the Award, Verizon filed suit seeking to vacate the Award pursuant to section 301 of the Labor Management Relations Act ("LMRA"). That provision grants district courts jurisdiction to review and vacate an arbitration award if, *inter alia*, the

1

arbitrator exceeded his authority.  The Unions filed a motion to dismiss Verizon's complaint on August 30, 2016, asserting that the Award is not final and that Verizon's complaint must therefore be dismissed pursuant to the "complete arbitration rule," which mandates that courts should not entertain a lawsuit challenging a labor arbitration award until it is final.  The Board's July 2016 Award is not final, there is no reason to depart from the complete arbitration rule and the Unions' Motion is granted.

### I.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citation omitted).  While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the Second Amended Complaint will survive Defendants' motion to dismiss.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, it must "take note of the elements the plaintiff must plead to state a claim."  *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, ___ F.3d ___, No. 15-3491, 2016 WL 5799656, at *8 (3d Cir. Oct. 5, 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

## II.

Verizon and the Unions have been parties to successive CBAs since 1943. (Pl.'s Compl. ¶ 7.) On August 3, 2003 the parties executed a CBA effective through August 2, 2008. (*Id.*) In late 2004 Verizon began offering FiOS voice and data service, including high-speed, broadband internet service, to customers in select locations. (*Id.* ¶ 9.) In late 2006, Verizon began offering FiOS video service, which requires the use of a set-top box. (*Id.* ¶¶ 9–10.) A set-top box is a device that a FiOS TV customer operates with a remote in order to select content and change channels on his television.

At the time the FiOS service was initially offered in late 2006, customers wishing to upgrade to the service could either pick up a set-top box from a local service center and install the box themselves *or* have the box delivered and installed by a service technician. (Arbitration Opinion and Award ("Award"), ECF No. 1, Ex. C, at 8–9.) In late 2007, however, Verizon began to offer customers who wished to self-install the boxes the option of receiving the box in the mail and utilizing common carriers such as UPS to dropship the boxes directly to customers. (Award, at 4, 8.) The Unions took issue with this option and filed a grievance on February 25, 2008 asserting that all work associated with the set-top boxes, including delivery, must be

performed by union members.  (Pl.'s Compl. ¶ 12.)  Put more precisely, the disputed issue was whether Verizon's processes associated with *customer* installation of set-top boxes (including, but not limited to mailing boxes to customers for self-installation purposes) violated the parties' CBA.[1]  (Pl.'s Mem. in Opp'n ("Pl.'s Mem."), ECF No. 6, at 7.)  The parties were unable to resolve the issue through the grievance process, and the dispute was submitted to a tripartite arbitration board in accordance with the procedure contemplated by the CBA.  (Pl.'s Compl. ¶ 13.)  In its Award, the Board framed the issue as whether Verizon violated the CBA by "setting up a process to deliver set-top boxes to existing customers by common carrier for customer self-installation."  (Award, at 1.)

Also in the Award, however, the Board asserted that the "company's focus on customer self-installation of set-top boxes is misplaced," (*Id.* at 21), and instead decided a different question—whether Verizon had violated the CBA by mailing set-top boxes in instances in which Verizon technicians were to install them, (*Id.* at 24).  The Board concluded that "mailing set-top boxes is different from the customer picking up the set-top box from a company location because the customer is not a contractor" and "employees of other employers who do the delivery work as part of their jobs are getting the advantage of work that is protected by Section 17.01."  (*Id.*)  The Board directed Verizon to stop delivering set-top boxes by anyone other than union members "when the company is to provide the installation or maintenance on a set-top box."  (*Id.*)  However, upon finding that there was no record evidence on which to base a monetary remedy, the Board referred "the remedy issue" back to the parties for resolution and retained jurisdiction "in the event the parties cannot agree on what the monetary remedy shall be."  (*Id.*)

---

[1]  Article 17 of the CBA, addressing "Contract Labor," provides that "[t]he Company will maintain its established policies as to the assignment of work in connection with the installation and maintenance of communications facilities owned, maintained and operated by the Company."  (Pl.'s Compl., Ex. A, § 17.01.)

**III.**

Verizon contends that the Board exceeded the scope of its authority by addressing an issue not before it, namely whether Verizon could mail set-top boxes to customers when Union technicians, and not the customers themselves, were to install the box. (Pl.'s Compl. ¶ 22.) Verizon contends that the Board's decision to address an issue not in front of it taints the entire Award, (Pl.'s Compl. ¶ 22), and that to the extent the Award purports to require the company to utilize CWA members to deliver set-top boxes in all instances (other than when customers themselves pick up such boxes), the Award is "wholly unsupported by the records in the case, reflects a manifest disregard of the parties' collective bargaining agreement, violates public policy, and impermissibly imposes the panel majority's own brand of industrial justice," (Pl.'s Compl. ¶ 23).

The Unions claim that Verizon's attempt to vacate the Board's determination of liability prior to the resolution of the remedy is premature and must be dismissed under the complete arbitration rule. (Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 3, at 5.) (citing *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608 (3d Cir. 1990)). The complete arbitration rule mandates that judicial review of incomplete arbitration awards is inappropriate in all but the most extreme situations. *See Union Switch*, 900 F.2d at 611 (citing *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987)). The Unions contend that the July 2016 Award is incomplete by virtue of the "still pending remedial questions left unresolved by the Arbitration Board." (Defs.' Mot., at 7.)

Citing a district court decision, Verizon argues that the complete arbitration rule is inapplicable where the arbitration board has issued an unlawful award. (Pl.'s Mem., at 1) (citing *Bensalem Park Maint., Ltd. v. Metro. Reg'l Council of Carpenters*, No. 11-2233, 2011 WL

2633154, at *1 (E.D. Pa. July 5, 2011)).  Verizon contends that because the Board exceeded its scope of authority by deciding an issue not before it, the Award is facially unlawful, and the Court therefore need not and should not delay its review of the Award.  (Pl.'s Mem., at 2.)

### IV.

"There is a strong national policy favoring the resolution of disputes by arbitration." *Union Switch*, 99 F.2d at 615 (citations omitted).  "The Supreme Court has repeatedly stressed that arbitration is a particularly appropriate tool for preserving peace in the work place." *Id.* Moreover, section 301 of the LMRA "represents a clear Congressional mandate that agreements to arbitrate labor disputes be enforced by the district courts." *Id.*  Section 301, however, also gives district courts the ability to review and vacate labor arbitration awards under certain circumstances.  *See Matteson et al. v. Ryder System Inc. et al.*, 99 F.3d 108, 112 (3d Cir. 1996). For instance, an aggrieved party may challenge an award and request that a district court vacate it if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* (citing 9 U.S.C. § 10(a)(4)).

It is well-established that a district court should not entertain such a lawsuit challenging a labor arbitration award until the arbitration is complete and the award is final.  *Union Switch*, 900 F.2d at 610.  The Third Circuit refers to this principle as the complete arbitration rule and explains that the rule is aimed at avoiding fragmented litigation. *Id.* at 611. "Generally, an arbitrator's decision is considered final when the arbitrator has completed his determination of every issue submitted by the parties." *Millmen Local 550*, 828 F.2d at 1376 (quoting *Anderson v. Norfolk & Western R. Co.*, 773 F.2d 880, 883 (7th Cir. 1985)).  An award is not considered final and binding if it postpones the judgment of a remedy.  *Union Switch*, 900 F.2d at 611.

In *Union Switch*, like here, the arbitrator issued an award that was final with respect to liability but left open the issue of what remedy should follow and retained jurisdiction to rule on any subsequent remedial disputes. 900 F.2d at 609. The employer then sued seeking to have the arbitrator's award vacated, and the union counterclaimed for enforcement of the award. *Id.* The district court granted summary judgment for the union. *Id.* at 609–10. No appeal from that order was taken. *Id.* at 610. When the case reached the Court of Appeals on a different issue, the court disapproved of the district court's exercise of jurisdiction over the original complaint and counterclaim:

> There can be no doubt that the district court committed serious error when it entertained the original cross-applications to vacate or enforce, error that would have required reversal of the court's judgment had there been an appeal. In entertaining the original action, the district court acted contrary to the consistent teachings of this court and, so far as we are aware, every other Court of Appeals that has considered a similar issue.

*Id.* Citing several analogous cases, the court clarified that because the arbitration award left open the question of remedies, it did not constitute a final and binding award reviewable under section 301, and the district court therefore should have dismissed the complaint. *Id.* at 611.

The court noted that the "large number of cases presenting arbitration awards that defer determination of the remedy indicates that this is a common practice among arbitrators" and commented that there is nothing wrong with this practice as it is "entirely reasonable for an arbitrator to 'call time out' during an arbitration in the hope that a partial resolution will inspire the parties to work out their remaining differences on their own, thereby avoiding the time and expense of additional arbitration." *Id.* The court explained that the complete arbitration rule ensures "that parties do not use these 'time outs' as an opportunity to rush to court, either to preserve what they have just won, or (more often) to forestall a process that is not turning out as they might have wished." *Id.* If parties were permitted to do so, "the arbitrator's time [would]

7

only be spared, if at all, at the great expense of vastly prolonged and unnecessary litigation, which is of course precisely what arbitration exists to avoid." *Id.* Instead, the arbitration should continue through to a determination of the appropriate relief and only then, if at all, should the dispute be presented in district court. *Id.* That way, the district court is "in a position to resolve *all* of the issues presented by this nexus of operative facts." *Id.*

*Union Switch* clearly established that an arbitration award that postpones the determination of a remedy is not final, and that the judicial review of incomplete awards is inappropriate in all but the "most extreme" situations because review at that stage would disrupt and delay the arbitration process and could result in piecemeal litigation. *Id.* (citing *Millmen Local 550*, 828 F.2d at 1375, 1377). Verizon nevertheless cites *Bensalem Park* for the proposition that a court may bypass the complete arbitration rule if an otherwise incomplete award is unlawful because it addresses an issue that was not presented at arbitration. (Pl.'s Mem., at 2.) In *Bensalem Park*, the company sought to vacate an arbitration award that, like the one at issue here, left open the question of remedies. 2011 WL 2633154, at *6. Because the award was analogous to those discussed in *Union Switch*, the court found that it was not final. *Id.* After a lengthy discussion about the complete arbitration rule and its applicability to the case, however, the court nevertheless proceeded to address the company's argument that the award was unlawful and should be vacated because the arbitrator exceeded his authority by awarding financial remedies beyond the relevant timeframe and finding the company liable for violations "yet to be determined by the Union." *Id.* at *7. Without citing any authority, the court addressed the company's argument that an otherwise incomplete and unreviewable award, if unlawful, is rendered final for purposes of the complete arbitration rule. *Id.* The court stated:

> If the award is not lawful, then the award is complete and there are no remaining unresolved issues to be determined. However, if the award is lawful, the complete

arbitration rule dictates that we dismiss this case. Thus, we must now consider whether the portion of the award that renders the arbitration incomplete is lawful.

*Id.* The court went on to conclude that the arbitrator had not exceeded the scope of his authority and dismissed the case pursuant to the complete arbitration rule. *Id.* at *10.

Verizon seizes upon the above language in *Bensalem Park* and contends that the complete arbitration rule is inapplicable where an arbitration award exceeds the scope of its authority and the unresolved questions (of damages) flow from the unlawfully decided issue. Whatever the court in *Bensalem Park* may have said, it does not mean that courts should abandon the complete arbitration rule in order to determine whether or not an award is lawful. *Union Switch* articulates no such exception, and such a practice would largely undermine the rule's purpose of avoiding piecemeal litigation. Moreover, recognizing such an exception would directly contravene the mandate in *Union Switch* that review at this stage should be avoided in all but the most extreme situations since all a disgruntled party would have to do to circumvent the complete arbitration rule is allege that the award is unlawful.[2] The Unions' Motion to Dismiss is granted and Verizon's complaint is dismissed without prejudice to Verizon's right to challenge a final award.

An appropriate order follows.

*/s/ Gerald J. Pappert*

---

[2] Such an allegation is often the basis of an aggrieved party's effort to have an arbitration award vacated under § 301 and granting review under such an exception would completely vitiate the complete arbitration rule.

9